**34**
Richard M. Pachulski (CA Bar No. 90073)
Alan J. Kornfeld (CA Bar No. 130063)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile: 310-201-0760
E-mail: rpachulski@pszjlaw.com
akornfeld@pszjlaw.com
tkapur@pszjlaw.com

*Counsel to Defendants Dove's Landing, LLC, Robert J. Wentz, and Oroville Sports Club, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| In re<br><br>OROVILLE HOSPITAL, *et al.*,<br><br>Debtors and Debtors in Possession. | Lead Case No. 25-26876<br><br>Jointly Administered With:<br>Case No. 25-26877<br><br>Adv. Proc. No.: 26-02092<br>DCN TMK-1<br><br>Chapter 11 |
| ☒ Affects All Debtors<br>☐ Affects Oroville Hospital<br>☐ Affects ProHealth Corporation: A Nonprofit Healthcare System<br><br>Debtors and Debtors in Possession | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS DOVE'S LANDING, LLC, ROBERT J. WENTZ, AND OROVILLE SPORTS CLUB, LLC TO: (1) COMPEL ARBITRATION; (2) STAY DEFENDANTS' TIME TO RESPOND TO THE COMPLAINT; AND (3) STAY THIS ADVERSARY PROCEEDING** |
| OROHEALTH CORPORATION: A NONPROFIT HEALTHCARE SYSTEM, and OROVILLE HOSPITAL,<br><br>Plaintiffs,<br>v.<br><br>DOVE'S LANDING, LLC; ROBERT J. WENTZ; OROVILLE SPORTS CLUB, LLC; and ROB BONTA, as Attorney General of California (nominal defendant),<br><br>Defendants. | Date: October 20, 2026<br>Time: 11:00 a.m.<br>Crtrm.: Courtroom 32<br>501 I Street, Suite 3-200<br>Sacramento, California 95814<br>Judge: Hon. Christopher D. Jaime |



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ....... 1

II. RELIEF REQUESTED ....... 4

III. RELEVANT BACKGROUND ....... 5

A. The Lease Transactions ....... 5

B. The Arbitration Provisions of the Leases ....... 5

C. Dove's Landing's Written Election Exercising the Arbitration Provisions ....... 6

D. Lease-Related Proceedings in the Main Cases ....... 7

E. The Claims ....... 8

IV. LEGAL STANDARD ....... 8

A. The California Arbitration Act Governs and Requires Arbitration and a Stay ....... 8

B. The Two-Part Inquiry to Compel Arbitration is Satisfied Here ....... 9

C. Doubts as to Scope Are Resolved in Favor of Arbitration, and the Merits Are Not the Court's Concern ....... 10

D. That a Proceeding Is "Core" Does Not Itself Defeat Arbitration ....... 10

E. The Lease-Based Claims Here Are Not Core, and the Court Therefore Generally Lacks Discretion to Deny Arbitration ....... 11

V. ARGUMENT ....... 12

A. Valid Agreements to Arbitrate Exist Under Both Leases, and Dove's Landing Has Elected to Invoke Them ....... 12

1. The Arbitration Agreements Are Valid and Enforceable ....... 12

2. The Arbitration Option Has Been Exercised ....... 13

3. Defendants Have Not Waived the Right to Arbitrate ....... 14

B. The Non-Signatory Parties Are Within the Arbitration Agreement ....... 15

1. Plaintiff Hospital is Within the Arbitration Agreement ....... 15

2. Defendants Wentz and Sports Club Are Within the Arbitration Agreement ....... 17

C. The Lease-Based Claims Fall Within the Arbitration Provisions ....... 18


PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

D. The Court Should Exercise Its Discretion to Refer the Sixth Through Eleventh Claims for Relief to Arbitration; Alternatively, Those Claims for Relief Should Be Stayed ....20

1. The Court Should Refer the Sixth Through Eleventh Claims for Relief to Arbitration ....20

a. Plaintiffs Concede That the Sixth Through Eleventh Claims for Relief Arise From the Lease ....20

b. There is No Inherent Conflict Between Arbitration of the Sixth Through Eleventh Claims for Relief and the Purposes of the Bankruptcy Code ....22

2. If the Court Declines Referral to Arbitration, the Sixth through Eleventh Claims for Relief Should Be Stayed ....25

3. The Twelfth Claim for Relief Should Be Stayed ....25

4. Authority for the Stay, and the Equities ....26

VI. CONCLUSION ....26


PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ackerman v. Eber (In re Eber),*
687 F. 3d 1123 (9th Cir. 2012) ..... 10

*Arthur Andersen LLP v. Carlisle,*
556 U.S. 624 (2009) ..... 18

*Boucher v. Alliance Title Co.,*
127 Cal. App. 4th 262 (2005) ..... 16, 17

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.,*
207 F.3d 1126 (9th Cir. 2000) ..... 9

*Circuit City Stores, Inc. v. Najd,*
294 F.3d 1104 (9th Cir. 2002) ..... 13

*Coast Plaza Doctors Hospital v. Blue Cross of California,*
83 Cal.App.4th 677 (2000) ..... 10

*Comer v. Micor, Inc.,*
436 F.3d 1098 (9th Cir. 2006) ..... 16, 18

*Continental Insurance Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),*
671 F.3d 1011 (9th Cir. 2012) ..... 3, 4, 10, 11, 22, 23, 25, 26

*Deleon v. Verizon Wireless, LLC,*
207 Cal. App. 4th 800 (2012) ..... 13

*Dream Theater, Inc. v. Dream Theater,*
124 Cal. App. 4th 547 (2004) ..... 8, 13

*Dryer v. Los Angeles Rams,*
40 Cal. 3d 406 (1985) ..... 17

*Ellison Framing, Inc. v. Zurich American Ins. Co.,*
805 F. Supp. 2d 1006 (E.D. Cal. 2011) ..... 5

*Enron Power Mktg. v. City of Santa Clara* (*In re Enron Power Mktg.*),
2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) ..... 22, 23

*First Options of Chi., Inc. v. Kaplan,*
514 U.S. 938 (1995) ..... 12

*Franklin v. Community Regional Medical Center,*
998 F.3d 867 (9th Cir. 2021) ..... 16, 17

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

*Goldman v. KPMG LLP*, 173 Cal.App.4th 209 (2009) .......... 17

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) .......... 21

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989) .......... 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) .......... 10

*In re Cardeli*, 2010 WL 4791801 (Bankr. S.D.N.Y. Nov. 18, 2010) .......... 22, 23

*In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. 181 (Bankr. S.D.N.Y. 2002) .......... 22, 23

*In re Winimo Realty Corp.*, 270 B.R. 108 (S.D.N.Y. 2001) .......... 21, 22

*JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222 (2011) .......... 16, 17

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) .......... 17

*Landis v. North American Co.*, 299 U.S. 248 (1936) .......... 26

*Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979) .......... 26

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042 (2001) .......... 13

*Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166 (N.D. Cal. 2021) .......... 12, 13

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) .......... 10

*Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042 (9th Cir. 2009) .......... 17

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal.4th 223 (2012) .......... 9

*Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562 (2024) .......... 14

*Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) .......... 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*RN Solution, Inc. v. Catholic Healthcare West*,
165 Cal. App. 4th 1511 (2008) ........ 17

*Rosenthal v. Great Western Fin. Securities Corp.*,
14 Cal.4th 394 (1996) ........ 9

*Rowe v. Exline*,
153 Cal. App. 4th 1276 (2007) ........ 17, 18

*Shearson/American Express Inc. v. McMahon*,
482 U.S. 220 (1987) ........ 10, 22

*Stewart v. Preston Pipeline Inc.*,
134 Cal. App. 4th 1565 (2005) ........ 12, 13

*Thomas v. Westlake,*
204 Cal. App. 4th 605 (2012) ........ 17

*Tiri v. Lucky Chances, Inc.*,
226 Cal. App. 4th 231 (2014) ........ 8, 13

**<u>STATUTES</u>**

11 U.S.C. § 105(a) ........ 5, 25

11 U.S.C. § 362(a)(3) ........ 5, 25

11 U.S.C. § 365 ........ 7, 21

11 U.S.C. § 365(d)(3) ........ 12

11 U.S.C. § 502(d) ........ 24

11 U.S.C. § 544 ........ 20

11 U.S.C. § 544(a) ........ 21

11 U.S.C. § 548(b) ........ 21

11 U.S.C. § 549 ........ 20, 24

11 U.S.C. § 7012 ........ 5, 27

28 U.S.C. § 157(b)(2)(A) ........ 11

28 U.S.C. § 157(b)(2)(E) ........ 11

28 U.S.C. § 157(b)(2)(K) ........ 11

9 U.S.C. § 2 ........ 8

9 U.S.C. § 3 ........ 9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9 U.S.C. § 4 .......... 9
9 U.S.C. §§ 1-16 .......... 8
Cal. Civ. Code § 1550 .......... 12
Cal. Civ. Code § 1556 .......... 12
Cal. Civ. Code § 1605 .......... 13
Cal. Civ. Code § 1639 .......... 11, 13
Cal. Code Civ. Proc. § 1281 .......... 9
Cal. Code Civ. Proc. § 1281.2(a) .......... 10
Cal. Code Civ. Proc. § 1281.2(b) .......... 10
Cal. Code Civ. Proc. § 1281.2(c) .......... 10, 24
Cal. Code Civ. Proc. § 1281.4 .......... 5, 9, 11, 26, 27
Cal. Corp. Code § 5233 .......... 20
Cal. Corp. Code § 5233(c) .......... 5

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

**RULES**

Fed. R. Civ. P. § 12 .......... 5, 27
Fed. R. Civ. P. § 12(b) .......... 5

Dove's Landing, LLC ("**Dove's Landing**"), Robert J. Wentz ("**Wentz**") and Oroville Sports Club LLC ("**Sports Club**" and, together, the "**Defendants**") hereby file this *Memorandum of Points and Authorities* in support of their *Motion to (1) Compel Arbitration; (2) Stay Defendants' Time to Respond to the Complaint; and (3) Stay This Adversary Proceeding* (the "**Motion**"), as well as the supporting exhibits and the *Declaration of Robert J. Wentz* (the "**Wentz Decl.**"), with respect to the Complaint filed against them on August 4, 2026 by OroHealth Corporation: A Nonprofit Healthcare System ("**OroHealth**") and Oroville Hospital (the "**Hospital**" and, together the "**Debtors**" or "**Plaintiffs**"). In support, the Defendants respectfully represent as follows:

## I. PRELIMINARY STATEMENT

Stripped of its baseless rhetoric and scurrilous and unfounded allegations, the Debtors' fourteen-count Complaint is a dispute that is governed by the arbitration provision in the leases at issue. As set forth in the Complaint itself: "This is an adversary proceeding … to recharacterize the two written lease agreements" … "between Plaintiff OroHealth Corporation and Defendant Dove's Landing, LLC" (which leases the Debtors define as the "**Initial Lease**" and the "**Renewal Lease**" and, together, the "**Lease Transactions**"). The Complaint's allegations of misconduct on the part of the Defendants with respect to the Lease Transactions are not only specious and contrary to reality but are wholly devoid of evidentiary support. The allegations are based solely on "information and belief," innuendo and rank conjecture in an attempt to rewrite history in order to fabricate claims that would otherwise be barred – not only by the facts themselves but also on statute of limitations grounds. The Defendants intend to vigorously defend against these meritless claims in the proper forum – which, as provided by both the Initial Lease and the Renewal Lease, is arbitration. Arbitration will provide an efficient, expeditious and cost-effective way for the parties to obtain a determination as to whether the claims have merit. The Defendants do not believe the claims have any merit and arbitration will preserve the resources of all parties in reaching a streamlined, comprehensive and efficacious resolution of these disputes.

The Defendants have therefore filed the motion to compel arbitration and stay this adversary proceeding so that the matter may be heard and the Defendants' rights vindicated in accordance with the parties' agreed-to process and procedure. This is the proper course because, putting aside the

Complaint's groundless and misleading attempts to recharacterize commercially reasonable conduct and transactions, boiled down to its essence, the relief requested by the Complaint is to hold that the two commercial leases were not leases at all; to declare the resulting instrument a mortgage; to quiet title on that theory; to impose a constructive trust as the remedy for that theory; and to compel an accounting of rent and CAM charges assessed under those same leases. Every one of these claims requires the trier of fact to construe the Initial Lease and the Renewal Lease.

The Debtors say so themselves – describing the Complaint as "assert[ing] claims under §§ 544, 548, 549, and 550, among others, ***arising from the Lease*** among other related transactions."[1] That is not Defendants' characterization. It is Debtors'. And it maps precisely onto the operative contractual language, which commits to arbitration "any question, dispute or controversy ***arising under the provisions of this Lease Agreement***."[2]

The parties agreed how such disputes would be resolved – twice, in identical terms. Section 39 of the Renewal Lease provides that "any question, dispute or controversy arising under the provisions of this Lease Agreement, at the option of Lessor, shall be determined by arbitration," conducted under California law and the rules of the American Arbitration Association.[3] Section 41 of the Initial Lease is identical.[4] Dove's Landing, as Lessor, has exercised that option under both Leases by written election served on Debtors' counsel on August 27, 2026.[5] In the written election, Dove's Landing has set forth its agreement to be bound by the resulting arbitration to the same extent as the Debtors. Wentz and Sports Club, non-signatories to the Leases, have also agreed to be so bound. Hospital, a Plaintiff and non-signatory to the Leases, is also appropriately bound to the arbitration provisions of the Leases upon which it brings suit. Following service of the written

[1] *Debtors' Omnibus Reply in Support of Motion for Entry of an Order Authorizing the Assumption of Lease Agreement, Etc.* [Docket No. 1081] at 5 (emphasis added) ("**Omnibus Reply**").

[2] Renewal Lease § 39 (Complaint Ex. 5 at 12) (emphasis added); *see also* Initial Lease § 41 (Complaint Ex. 2 at 13).

[3] Renewal Lease § 39 at 12 (Compl. Ex. 5).

[4] Initial Lease § 41 at 13 (Compl. Ex. 2).

[5] A true and correct copy of the written election is attached to the exhibits filed in support of the Motion as **Exhibit B**; Wentz Decl. ¶¶ 5-7.

election, by letter dated September 1, 2026, counsel for the Debtors advised that the Debtors refused to consent to arbitration.

Where a valid agreement to arbitrate exists, and the agreement encompasses the dispute at issue, an order compelling arbitration is mandatory. *See* Cal. Code Civ. Proc. § 1281.2; *Omar v. Ralphs Grocery Co.,* 118 Cal. App. 4th 955, 960-61 (2004). Under Ninth Circuit law, a bankruptcy court generally lacks discretion to deny arbitration of "non-core" matters, and possesses discretion to deny arbitration of a "core" matter only where it finds that arbitration would "inherently conflict" with the underlying purposes of the Bankruptcy Code. *See Continental Insurance Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir. 2012).

The dependency among the fourteen Claims for Relief of the Complaint is total:

- The declaratory and title claims ask what the Leases are.
- The fiduciary claims ask whether the Leases' terms were fair.
- The accounting claim asks what the Leases required the Debtors to pay.
- The fraudulent-transfer claims ask whether payments made under the Leases exchanged reasonably equivalent value – a question that cannot be reached, let alone answered, without first construing contractual provisions of the Leases.

Compl. ¶¶ 158-159, 166-167, 182-185, 191-194.

These claims are pure contractual disputes, including the Sixth through Eleventh Claims for Relief nominally styled as "core" fraudulent transfer claims. The fraudulent transfer claims rooted in the underlying contractual disputes should therefore also be treated as "non-core" and non-discretionary arbitration is properly compelled as to these claims. Even if determined to be "core," as discussed in Section V.D.1.b. herein, there is no conflict with the underlying purposes of the Bankruptcy Code as required under Ninth Circuit law and arbitration is properly compelled.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

## II. RELIEF REQUESTED

All of the causes of action in the Complaint arise out of the Leases. The Defendants therefore request the following relief:[6]

***Primarily***, an order compelling arbitration of the First, Second, Third, Thirteenth, and Fourteenth Claims for Relief;[7] and of the Fourth Claim for Relief, including to the extent it seeks turnover of the Property or damages measured by the Lease terms (Compl. ¶ 131).[8] Further, under *Thorpe*, arbitration of the Sixth through Eleventh Claims for Relief,[9] all of which are breach of contract claims that are predicated on payments made under the Leases that require the Leases to be construed. Defendants request that the Court exercise its discretion under *Thorpe* to compel arbitration of the Sixth through Eleventh Claims for Relief,[10] to the extent considered "core," on the grounds that there is no inherent conflict with the underlying purposes of the Bankruptcy Code. This is a two-party commercial dispute, over one parcel of real property, and one stream of lease payments, turning on the construction of contracts the parties twice agreed to arbitrate, brought against defendants who have consistently maintained that these very questions belong in a plenary forum. The alternative is duplicative litigation of a single set of facts in two forums, with a live risk of inconsistent rulings on the controlling lease issues.

---

[6] A proposed form of order is attached to the exhibits filed in support of the Motion as **Exhibit A**.

[7] First Claim for Relief (Declaratory Relief/Recharacterization); Second Claim for Relief (Quiet Title); Third Claim for Relief (Imposition of Equitable Mortgage); Thirteenth Claim for Relief (Accounting); Fourteenth Claim for Relief (Constructive Trust).

[8] Fourth Claim for Relief (Breach of Fiduciary Duty – Common Law).

[9] Sixth Claim for Relief (Fraudulent Conveyance in Violation of California Civil Code § 3439.04(a)(1) Actual Fraud); Seventh Claim for Relief (Fraudulent Conveyance in Violation of California Civil Code § 3439.04(a)(2) Constructive Fraud); Eighth Claim for Relief (Common Law Fraudulent Conveyance); Ninth Claim for Relief (Fraudulent Transfer 11 U.S.C. § 548); Tenth Claim for Relief (Avoidance of Fraudulent Transfer 11 U.S.C. § 544(b)); Eleventh Claim for Relief (Avoidance and Recovery of Post-Petition Transfer of Estate Property 11 U.S.C. §§ 549(b) and 550).

[10] The Debtors state that the Eighth Claim for Relief arises under "common law." Compl. ¶¶ 170-179. As such, the Eighth Claim for Relief should be regarded as a "non-core" claim. The Defendants do not concede that the Eighth Claim for Relief is core even though they group, out of convenience, the Eighth Claim for Relief among the Sixth through Eleventh Claims for Relief that are facially styled as "core."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

***Alternatively***, if the Court declines to refer the Sixth through Eleventh Claims for Relief to arbitration, an order staying those Claims for Relief under Cal. Code Civ. Proc. § 1281.4 and the Court's inherent authority pending completion of the arbitration on the underlying lease disputes.

***In either event***, a stay of the Fifth Claim for Relief, which includes the Attorney General (as a nominal defendant), who is not a party to either Lease;[11] a stay of the Twelfth Claim for Relief, which asks this Court to enforce its own automatic stay and which Defendants do not ask to be arbitrated;[12] and a stay of this adversary proceeding in all other respects.

***Last***, Defendants request an order staying the requirement to respond to the Complaint, pursuant to Rule 12 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7012, for a period of twenty-eight days after completion of the arbitration.[13]

## III. RELEVANT BACKGROUND

### A. The Lease Transactions

On December 15, 2011, OroHealth and Dove's Landing entered into the Initial Lease. Compl. ¶ 57 & Ex. 2. On January 1, 2018, the same two parties entered into the Renewal Lease. Compl. ¶ 73 & Ex. 5. Plaintiffs plead that these two instruments together constitute the "Lease Transactions" and treat them as an integrated whole. Compl. ¶ 1. Both Leases were executed by Robert J. Wentz, as the manager of Lessor Dove's Landing, and by Scott Chapple, Chief Operating Officer, for Lessee OroHealth.

### B. The Arbitration Provisions of the Leases

Section 39 of the Renewal Lease, captioned "ARBITRATION," provides in full:

> In addition to those provisions specifically subject to arbitration, any question, dispute or controversy arising under the provisions of this Lease Agreement, at the

---

[11] Fifth Claim for Relief (Breach of Fiduciary Duty Cal. Corp. Code § 5233(c)).

[12] Twelfth Claim for Relief (Violation of the Automatic Stay 11 U.S.C. §§ 105(a) and 362(a)(3)).

[13] *Ellison Framing, Inc. v. Zurich American Ins. Co.*, 805 F. Supp. 2d 1006, 1012 (E.D. Cal. 2011) (approving defendant's request to stay the requirement to file an answer that when such request was filed as part of a motion to compel arbitration), citing, *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (holding that federal courts have the inherent authority to hear pre-answer motions that are not expressly enumerated in Rule 12(b) of the Federal Rules because courts have the power to regulate actions that are closely related to the management of the lawsuit that involve matters of judicial administration).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> option of Lessor, shall be determined by arbitration. Such arbitration shall be conducted pursuant to the provisions of the Laws of the State of California, with the rules of procedure to be those of the American Arbitration Association or its successor insofar as said rules or procedure do not conflict with the Laws of the State of California. Any award entered as a result of arbitration shall be entered as a judgment with the cost of arbitration to be paid as ordered by the arbitrator.

Section 41 of the Initial Lease is identical in language. Both Leases therefore reserve to the Lessor (Dove's Landing) the option to have any question, dispute, or controversy arising under the Lease determined by arbitration under California law and the AAA rules.

Arbitration is not an isolated feature of these instruments. Each Lease routes disputes to arbitration in accordance with the arbitration provisions of the Leases in at least four additional places, and in each of those four the commitment is mutual and non-optional, including casualty repair disputes committed to a three-arbitrator panel whose "decision thereon shall be final and binding upon both Lessor and Lessee." Renewal Lease §§ 3 (Rent), 7 (Insurance), 16 (Utilities), 18 (Destruction of Premises).[14] Arbitration is the Leases' default dispute-resolution architecture.

**C. Dove's Landing's Written Election Exercising the Arbitration Provisions**

On August 27, 2026, Dove's Landing, as Lessor, Wentz, as manager of Lessor, and Sports Club, as named defendant herein, caused to be served on Debtors' counsel a written election exercising the arbitration provision under both Leases, identifying the claims subject to that election, and requesting that Debtors stipulate to arbitration and to stay this adversary proceeding. A true and correct copy of the written election is attached to the exhibits filed in support of the Motion as **Exhibit B**.

In that election, Dove's Landing also agreed – without conceding that the arbitration provisions are anything other than fully enforceable as written – to be bound by the arbitration of any claims referred by this Court to the same extent as Debtors, to submit to the arbitrator's jurisdiction as to those claims, and to consent to entry of any resulting award against it. Wentz and Sports Club have also so agreed. Ex. B; Wentz Decl. ¶¶ 5-7.

[14] The Initial Lease contains materially identical provisions at §§ 3, 7, 16, and 18.

Following service of the written election, by letter dated September 1, 2026, counsel for the Debtors advised that the Debtors refused to consent to arbitration. The Defendants therefore seek the relief requested herein.

**D. Lease-Related Proceedings in the Main Cases**

On July 6, 2026, the Debtors moved to assume the Renewal Lease under 11 U.S.C. § 365 (the "**Lease Assumption Motion**") [Docket Nos. 993 (Motion), 995 (Memorandum of P&As)]. By the Lease Assumption Motion, the Debtors asked this Court to find "that there is no default under the Lease requiring a cure, or, alternatively, that payment of a cure at this time is not appropriate given potential claims against Dove's Landing." Memorandum of P&As at 14. The Debtors disclosed that they had "set off postpetition rent against the inadvertent $380,000 payment," *id.* at 9, and asserted potential claims for rent above fair market value, CAM overcharges, and excess square footage. *Id.* at 9, 13.

On July 28, 2026, Dove's Landing opposed the Lease Assumption Motion (the "**Opposition**") [Docket No. 1027]. In that Opposition, Dove's Landing took the position that the Lease Assumption Motion was a summary proceeding in which the parties' substantive contract rights could not be adjudicated, and that those rights had to be resolved in an plenary proceeding. Dove's Landing set forth that "fundamental questions related to the parties' contractual and other state-law rights – such as the validity or legality of an agreement, the enforceability of particular provisions, or whether one side has breached or terminated the agreement – are not considered at this stage," and that the resulting order "does not dispose of such questions but leaves all existing rights intact for full plenary litigation on the merits, such as in an adversary proceeding." Opposition at 8. It added that if the Debtors "believe[] that [they have] affirmative claims against Dove's Landing, then it (or the Committee) should commence an action before the proper court and adjudicate them." *Id.* at 12.

On August 4, 2026, the Debtors commenced this adversary proceeding. The Debtors described it as litigation they were "now compelled to bring … in an abundance of caution." Omnibus Reply in Support of Lease Assumption Motion [Docket No. 1081] at 5. Defendants served their written arbitration election promptly thereafter and filed this Motion. Defendants have not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

otherwise filed any substantive pleadings or taken action in the adversary proceeding. Defendants dispute the meritless allegations in the Complaint and intend to vigorously defend themselves against these allegations in the arbitration.

**E. The Claims**

The Complaint pleads fourteen Claims for Relief arising from a single transactional nucleus: Dove's Landing's 2012 acquisition of the Property, the two Leases, the improvements the Debtors funded, the rent and CAM charges the Debtors paid, and Wentz's role in structuring the arrangement. The Complaint, which is replete with innuendo and devoid of evidentiary support, confirms the unity of that nucleus – every claim incorporates by reference all preceding paragraphs. Every one of the claims requires the trier of fact to construe the Initial Lease and the Renewal Lease.

## IV. LEGAL STANDARD

**A. The California Arbitration Act Governs and Requires Arbitration and a Stay**

The claims at issue here are based on California leases between California-based parties that do not facially involve interstate commerce. Therefore, the Federal Arbitration Act (the "**FAA**") would not directly apply. *See* 9 U.S.C. § 2.[15] Enforcement would instead be governed by the California Arbitration Act ("**CAA**"), Cal. Code Civ. Proc. §§ 1280-1294.2.[16]

Although the CAA is an independent statutory scheme, California courts "often look to federal law when deciding arbitration issues under state law." *Dream Theater, Inc. v. Dream Theater,* 124 Cal. App. 4th 547, 553 (2004). That practice reflects the parallel language of the two statutes: because section 1281 and section 2 of the FAA "are interpreted the same under controlling precedent, it makes no difference to the outcome of this case if one but not the other applies." *Tiri v. Lucky Chances, Inc.,* 226 Cal. App. 4th 231, 241 (2014).

[15] The FAA, codified at 9 U.S.C. §§ 1-16, applies only to arbitration provisions in contracts "evidencing a transaction involving commerce," 9 U.S.C. § 2, and therefore does not reach the intrastate California lease transaction at issue here.

[16] Defendants do not concede that the FAA would produce a different outcome. In the event the Court were to conclude that the Lease Transactions evidence a transaction involving commerce within the meaning of 9 U.S.C. § 2, Defendants' entitlement to an order compelling arbitration and to a stay is at least as strong under 9 U.S.C. §§ 2-4, and Defendants expressly preserve that alternative ground.

Section 1281 of the CAA is the state analogue to FAA § 2 and is materially identical in operation: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Code Civ. Proc. § 1281.

Section 1281.2, the state counterpart to FAA § 4, supplies the mechanism for an order compelling arbitration. On petition of a party alleging the existence of a written agreement to arbitrate and a refusal to arbitrate, "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." Cal. Code Civ. Proc. § 1281.2.

Section 1281.4, the counterpart to FAA § 3, provides for a stay of an action pending arbitration, and its terms are likewise mandatory: where a court has ordered arbitration of a controversy that is an issue involved in a pending action, the court "shall, upon motion of a party to such action or proceeding, stay the action or proceeding . . . until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." Cal. Code Civ. Proc. § 1281.4.

**B. The Two-Part Inquiry to Compel Arbitration is Satisfied Here**

Under the CAA, a petition to compel arbitration presents a two-part inquiry: (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue. *See* Cal. Code Civ. Proc. § 1281.2; *Omar v. Ralphs,* 118 Cal. App. 4th at 961. Where both elements are established and no statutory ground for refusal applies, the court has no discretion to withhold an order compelling arbitration; enforcement according to the agreement's terms is mandatory. Cal. Code Civ. Proc. § 1281.2; *see also Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130-31 (9th Cir. 2000) (articulating the same two-part framework under the FAA).

The party seeking arbitration bears the burden of proving the existence of a valid agreement, and the party opposing arbitration bears the burden of proving any defense to enforcement. *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal.4th 223, 236 (2012). Each burden is carried by a preponderance of the evidence. *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 413 (1996). The grounds on which a court may refuse to compel arbitration

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

are limited and enumerated by statute. None applies here, including subdivision (c) – the sole ground addressed to the court's discretion. Cal. Code Civ. Proc. § 1281.2(a)-(c).[17]

**C. Doubts as to Scope Are Resolved in Favor of Arbitration, and the Merits Are Not the Court's Concern**

California has a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and doubts concerning the scope of an arbitration clause are resolved in favor of arbitration. *See e.g., Coast Plaza Doctors Hospital v. Blue Cross of California,* 83 Cal.App.4th 677, 686-87 (2000) (strong public policy in favor of arbitration; doubts resolved in favor of arbitration). This mirrors the federal rule. *Cf. Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) (superseded by statute on other grounds).

A court may not decline to enforce an arbitration agreement on the ground that the claim to be arbitrated appears weak or the arbitration demand appears unmeritorious. Section 1281.2 confines the court's inquiry to the existence of an agreement, its scope, waiver, and grounds for rescission. The merits of the underlying controversy are committed to the arbitrator. Cal. Code Civ. Proc. § 1281.2; *Coast Plaza*, 83 Cal.App.4th at 686-87; *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68-69 (2019) (rejecting a "wholly groundless" exception under the FAA).

**D. That a Proceeding Is "Core" Does Not Itself Defeat Arbitration**

That a proceeding is "core" does not itself defeat arbitration. The Ninth Circuit's framework is one of presumptive enforcement subject to a narrow exception: the bankruptcy court generally lacks discretion to deny arbitration of non-core matters, and possesses discretion to deny arbitration of a core matter only where it finds that arbitration would "inherently conflict" with the underlying purposes of the Bankruptcy Code. *Thorpe*, 671 F.3d at 1020-21; *accord Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1130-31 (9th Cir. 2012). The party resisting arbitration bears the burden of establishing that conflict. *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

[17] The statutory grounds for refusal to compel arbitration are narrow and only subsection (c) is discretionary. They are: (a) waiver of the right to compel; (b) grounds for rescission of the agreement; and (c) where a party to the arbitration agreement is also a party to a pending action with a third party arising out of the same transaction and there is a possibility of conflicting rulings on a common issue. Cal. Code Civ. Proc. § 1281.2(a)-(c).

Absent a finding of inherent conflict, the CAA's mandatory command under sections 1281.2 and 1281.4 controls even in a core proceeding.

**E. The Lease-Based Claims Here Are Not Core, and the Court Therefore Generally Lacks Discretion to Deny Arbitration**

Under *Thorpe*, the characterization of a proceeding as core or non-core frames the Court's discretion: as to non-core matters, the bankruptcy court generally lacks discretion to deny enforcement of a valid arbitration agreement. *Thorpe*, 671 F.3d at 1020-21. A proceeding is core only if it invokes a substantive right created by federal bankruptcy law or is a proceeding that by its nature could arise only in bankruptcy. The First, Second, Third, Fourth, Thirteenth, and Fourteenth Claims for Relief satisfy neither description. Each arises under California law – contract characterization, quiet title, equitable mortgage, fiduciary duty, accounting, and constructive trust – and each could have been brought in a California court between these same parties on the day before the petition date, on the same facts, seeking the same relief. Nothing about these Claims for Relief depends on the existence of a bankruptcy case.

That the resolution of these Claims for Relief may affect the estate does not convert them into core proceedings. If it did, the non-core category would be empty, since every claim the estate holds affects the estate. Nor does the invocation of 28 U.S.C. §§ 157(b)(2)(A), (E) or (K) alter the analysis; those provisions cannot be read to encompass state-law claims that exist independently of the Code without displacing the statutory distinction *Thorpe* draws.

Defendants recognize that Plaintiffs may contend that some or all of these Claims for Relief are core. Defendants therefore present the argument in the alternative: to the extent the Court concludes that any Claim for Relief is non-core, arbitration should be compelled; and to the extent the Court concludes that any Claim for Relief is core, arbitration should nonetheless be compelled because no inherent conflict with the purposes of the Bankruptcy Code exists, for the reasons set forth below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## V. ARGUMENT

### A. Valid Agreements to Arbitrate Exist Under Both Leases, and Dove's Landing Has Elected to Invoke Them

#### 1. <u>The Arbitration Agreements Are Valid and Enforceable</u>

Formation is not in dispute. Plaintiffs attached both Leases to their Verified Complaint, pleaded their execution, sued to enforce and to recharacterize them, continue to occupy the Property under them, and section 365(d)(3) of the Bankruptcy Code provides that Oroville "shall timely perform all obligations" thereunder. A party cannot simultaneously sue on a written instrument and disclaim the dispute-resolution provision within it. Plus, the Debtors filed the Lease Assumption Motion, which would serve no purpose if the Renewal Lease was not an enforceable agreement. Further, the Court entered an order holding any ruling in abeyance but that the "Debtors shall treat the Lease as subject to the obligations under 11 U.S.C. § 365(d)(3), until further order of the Court."

Arbitration is a matter of contract, and whether a valid agreement to arbitrate exists is determined by ordinary state-law principles of contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, a valid contract requires parties capable of contracting, mutual consent, a lawful object, and sufficient consideration. Cal. Civ. Code § 1550. Each element is satisfied.

<u>Capacity and lawful object</u>. Plaintiffs do not contend that either party lacked capacity to contract. Cal. Civ. Code § 1556. Nor could they contend that the object is unlawful: the orderly resolution of disputes is a lawful object of contract. *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005).

<u>Consent</u>. Both Leases were signed on behalf of OroHealth by its Chief Operating Officer and on behalf of Dove's Landing by Wentz, its manager. Compl. Exs. 2, 5. One who signs an instrument that on its face is a contract is deemed to assent to its terms, and consent is measured by outward manifestation rather than subjective intent. *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1173 (N.D. Cal. 2021) (applying California law). Mutual assent "is determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

acts, and not their unexpressed intentions or understandings." *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (quotation omitted); *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible ...."). "[A] party's subjective intent, or subjective consent, therefore is irrelevant" to the question of mutual consent. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1587 (2005) (quotation omitted). "[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms" and "cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001).

Here, by executing the Initial Lease and then the Renewal Lease, OroHealth manifested its assent to the terms of those documents. OroHealth cannot claim it failed to read the Renewal Lease in its entirety because that would render all contracts meaningless. Accordingly, OroHealth cannot avoid the conclusion that it assented to the arbitration provision even if OroHealth did not actually understand or read that provision when the Renewal Lease was executed. *Marselian*, 514 F. Supp. 3d at 1173.

<u>Consideration</u>. The arbitration provisions are supported by the consideration exchanged for the Leases as a whole; a contract need not supply separate consideration for each of its provisions. Cal. Civ. Code § 1605. Independently, a promise to be bound by the arbitration process is itself adequate consideration. *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).

Because California law supplies the rule of decision on formation under both the CAA and the FAA, the federal decisions cited above apply the same principles this Court would apply under the CAA. *See Tiri*, 226 Cal. App. 4th at 241; *Dream Theater*, 124 Cal. App. 4th at 553.

2. <u>The Arbitration Option Has Been Exercised</u>

Both Leases condition arbitration on the Lessor's election. Dove's Landing, along with Wentz and Sports Club, exercised that election in writing on August 27, 2026, before filing this Motion. *See* Ex. B. Moreover, Dove's Landing has agreed to be bound by the arbitration of any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

referred claims to the same extent as Plaintiffs, has submitted to the arbitrator's jurisdiction as to those claims, and has consented to entry of any resulting award against it, as have Wentz and Sports Club. Ex. B; Wentz Decl. ¶¶ 5-7. The contractual condition triggering arbitration here has been satisfied.

3. Defendants Have Not Waived the Right to Arbitrate

Section 1281.2(a) permits a court to deny a petition to compel on the ground that "the right to compel arbitration has been waived by the petitioner." That ground is unavailable here. Although a court may deny a petition to compel arbitration on the ground of waiver, the party seeking to establish a waiver bears a heavy burden of proof. *Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562, 585 (2024) (the party seeking to establish waiver must show by clear and convincing evidence that the other party knew of its contractual right to compel arbitration and intentionally relinquished or abandoned that right). In assessing waiver, California courts consider, among other things, whether the party's actions are inconsistent with the right to arbitrate, whether the parties were engaged in the litigation before the party notified the opposing party of an intent to arbitrate, and whether the party requesting arbitration enforcement delayed for a long period before seeking a stay. *Id.* at 587 ("The record in this case shows that, being fully aware of its right to compel arbitration, [the party seeking arbitration] chose not to do so for 13 months, affirmatively indicated its intent to pursue a jury trial rather than arbitration, and actively engaged in discovery – words and conduct markedly inconsistent with an intent to arbitrate."). Each relevant consideration supports that there has been no waiver here.

The Defendants served their written election on Debtors' counsel on August 27, 2026 – promptly following the August 4, 2026 filing of the Complaint. Ex. B; Wentz Decl. ¶¶ 5-7. Defendants have filed no answer, no counterclaim, and no substantive pleading in this adversary proceeding. They have served no discovery and taken none. No trial date has been set. The litigation machinery has not been invoked at all, let alone substantially.

Plaintiffs may nonetheless contend that Dove's Landing waived arbitration by urging, in its July 28, 2026 Opposition to the Lease Assumption Motion, that Debtors "commence an action before the proper court and adjudicate" any affirmative claims. Opposition [Docket No. 1027] at

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

12. That argument would, however, mistake what Dove's Landing said. The Opposition drew a distinction between *summary* and *plenary* adjudication, not between court and arbitrator. The point was that a section 365 assumption motion is a summary proceeding in which "fundamental questions related to the parties' contractual and other state-law rights" are "not considered," and that the resulting order "leaves all existing rights intact for full plenary litigation on the merits." *Id.* at 8. Arbitration under §§ 39 and 41 of the Leases ***is*** full plenary litigation on the merits – before the decision-maker the parties selected, applying the same California law, with an award enforceable as a judgment. Dove's Landing's position has been consistent throughout: these questions require a plenary forum, and the parties twice agreed which plenary forum that would be.

Nor did Dove's Landing waive arbitration by opposing a motion Debtors themselves filed. A party does not act inconsistently with its arbitration rights by defending against relief sought by its counterparty in a summary proceeding of the counterparty's choosing – particularly where, as here, the substance of its opposition was that those very rights could not be adjudicated there. And the Lessor's option under §§ 39 and 41 is an option to have a "question, dispute or controversy" determined by arbitration; the disputes framed by the Complaint did not exist in their present form until the Complaint was filed on August 4, 2026. Dove's Landing exercised its option promptly upon their assertion.

Indeed, this Court expressly held in its ruling on the Lease Assumption Motion that there was no waiver of rights, that it would hold the matter in abeyance pending resolution of the claims asserted in the adversary proceeding, and that it was making no determination as to the characterization of the Lease or any other factual determination bearing on the request for relief in the Lease Assumption Motion. [Docket No. 1158].

**B. The Non-Signatory Parties Are Within the Arbitration Agreement**

1. Plaintiff Hospital is Within the Arbitration Agreement

OroHealth, not Hospital, is the Lessee under both Leases. Compl. ¶¶ 57, 73. Yet the Hospital sues on those Leases, claims fee title through them, and seeks the benefit of their recharacterization. A non-signatory plaintiff who sues to enforce or to recharacterize a contract is equitably estopped from repudiating the contract's arbitration clause. *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

262, 269-73 (2005). In *Boucher*, the plaintiff sued Alliance Title Company, Inc. (Alliance), and Financial Title Company (Financial) in connection with a purported breach of plaintiff's employment agreement with Financial. *Id.* at 265. Both defendants petitioned to compel arbitration under an arbitration clause in the employment agreement. The trial court denied Alliance's petition, on the ground that it was not a signatory to the employment agreement. The Court of Appeal reversed. The court in *Boucher* concluded that, under federal law, a signatory of an arbitration clause may be compelled to arbitrate against a non-signatory when the relevant causes of action rely on and presume the existence of the contract containing the arbitration provision. *Id.* at 269. In other words, a plaintiff who relies on the contractual terms in a claim against a nonsignatory may be precluded from repudiating the arbitration clause in the contract. *Id.* at 272. The court held that the plaintiff in *Boucher* was estopped from avoiding arbitration with Alliance because his claims against Alliance relied on, made reference to, and presumed the existence of the employment agreement. *See also, JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1237-39 (2011) (ordering arbitration for both signatory and non-signatory parties because all of the plaintiffs were related entities that had a preexisting relationship thereby making it equitable to compel the nonsignatory to arbitrate, especially when the nonsignatory was suing as a third-party beneficiary of the contract containing the arbitration clause); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("We thus join many of our sister circuits who … have recognized that contract and agency principles continue to bind nonsignatories to arbitration agreements."); *Franklin v. Community Regional Medical Center*, 998 F.3d 867, 874-76 (9th Cir. 2021). (holding that a nonsignatory will be equitably estopped from avoiding arbitration where claims are "intimately founded in and intertwined with" the underlying contract containing the arbitration provisions).

Each of the causes of action in the Complaint here depend on and seek to interpret or recharacterize the Initial Lease and the Renewal Lease, the payments made under the Leases were not in exchange for reasonably equivalent value, or contend that Mr. Wentz breached his duty in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

connection with the parties' performance of the Leases. Hospital cannot claim the Leases' benefits and disclaim their burdens.

2. Defendants Wentz and Sports Club Are Within the Arbitration Agreement

A non-signatory defendant may compel a signatory plaintiff to arbitrate where the plaintiff's claims are dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement. Allegations of substantially interdependent and concerted misconduct by signatory and non-signatory are relevant to that inquiry, but do not alone suffice. *Boucher,* 127 Cal. App. 4th at 269-73; *Goldman v. KPMG LLP,* 173 Cal.App.4th 209, 217-21 (2009); *JSM Tuscany,* 193 Cal.App.4th at 1237-39; *Franklin,* 998 F.3d at 874-76; *see Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1128-29 (9th Cir. 2013) (declining to compel where the non-signatory had no obligations under the contract at issue). The Ninth Circuit has cautioned that estoppel is not automatic and requires the claims to rely on the contract's terms. *Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009). California courts likewise require that the claims be founded in the contract's terms rather than merely factually related to it – a requirement amply satisfied here. *Goldman*, 173 Cal.App.4th at 221-30.

Whether a non-signatory may be bound by, or may invoke, the arbitration agreement is determined by ordinary California principles of contract and agency law – including agency, assumption, equitable estoppel, alter ego, and third-party beneficiary. *Thomas v. Westlake*, 204 Cal. App. 4th 605, 612-15 & n.7 (2012) (holding that non-signatory defendants may invoke arbitration because the plaintiff's complaint alleged that "[a]t all times relevant herein, Defendants, and each of them, acted as an agent of each other Defendant in connection with the acts and omissions alleged herein."); *Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) (holding that "[i]f, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams [*i.e.*, the defendant], then they are entitled to the benefit of the arbitration provisions."); *RN Solution, Inc. v. Catholic Healthcare West*, 165 Cal. App. 4th 1511, 1520 (2008) (holding that non-signatory agents of signatory defendants may invoke arbitration of disputes arising under agreement containing the arbitration clause); *Rowe v. Exline*, 153 Cal. App. 4th 1276, (2007) (holding that by alleging the non-signatories to the agreement caused the breach on the ground that they are alter

egos, they are "entitled to the benefit of the arbitration provisions."). This is the same body of state law that federal courts apply to the question. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Comer*, 436 F.3d at 1101.

Plaintiffs' Complaint itself demonstrates that Wentz and Sports Club have satisfied this standard. Plaintiffs allege that Dove's Landing and Sports Club "were the agents, servants, employees, directors, subsidiaries, associates, aiders and abetters, and alter egos of Mr. Wentz," that all three "agreed to carry out the scheme described in this Complaint," conspiring "with each other to accomplish its ends," and that all three "are legally responsible for the acts of each other." Compl. ¶¶ 132, 146. While the Defendants will vigorously defend against such groundless allegations, having pleaded that the three Defendants are a single, unified actor for liability purposes, Plaintiffs cannot treat them as strangers for arbitration purposes. *See Rowe,* 153 Cal. App. 4th at 1284-87 (nonsignatory sued as the alter ego of a signatory may enforce the signatory's arbitration agreement; "while an agent is one who acts on behalf of a corporation, an alter ego is one who, effectively, is the corporation").

Every claim against Wentz and Sports Club is measured against the Leases. The fiduciary-duty claims allege that the lease terms were not "fair and reasonable" (Compl. ¶¶ 136, 152); that the rent exceeded fair market value by 7.8% (Compl. ¶¶ 79, 86); and that the CAM charges were improperly assessed under the Lease (Compl. ¶¶ 78, 84). None of those allegations – as specious as they are – can be adjudicated without construing the Leases.

Moreover, Wentz and Sports Club have, together with Dove's Landing, brought this Motion seeking to compel arbitration and have specially agreed to be bound by the arbitration provisions and determinations. Ex. B; Wentz Decl. ¶¶ 5-7

### C. The Lease-Based Claims Fall Within the Arbitration Provisions

The arbitration provisions reach disputes "arising under the provisions of this Lease Agreement." Because the two Leases contain identical arbitration language, a single scope analysis governs both. That is significant here because Plaintiffs themselves plead the Initial Lease and the Renewal Lease as components of a single integrated arrangement – the "Lease Transactions." Compl. ¶ 1; *see also id.* ¶¶ 95, 99 (treating both Leases together for purposes of the

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

recharacterization claim). On Plaintiffs' own theory of the case, the claims arise under both instruments, and both commit them to arbitration.

The First, Second, Third, Thirteenth, and Fourteenth Claims for Relief – as well as the Fifth Claim for Relief (for which the Defendants seek a stay) – are disputes over the interpretation and legal effect of the Leases:

- First Claim for Relief (Recharacterization). Plaintiffs ask for a declaration that the instruments "do not constitute leases." Compl. ¶ 100. This is a pure question of contract characterization, resolved by examining the parties' intent, the allocation of risk, the payment structure, and the term relative to useful life. Compl. ¶¶ 93-99. Every one of those questions requires looking to the terms of the Lease.

- Second Claim for Relief (Quiet Title). The Complaint's claim to quiet title is pleaded entirely derivatively: title follows from recharacterization. Compl. ¶¶ 102, 104. Plaintiffs concede the claim rests on "a disguised financing arrangement and true sale as discussed in the First Claim for Relief." Compl. ¶ 104. The quiet title claim is therefore tied to the Lease no less than the First Claim for Relief.

- Third Claim for Relief (Equitable Mortgage). Similarly, the Third Claim for Relief seeking an equitable mortgage is expressly conditional on the First and Second Claims for Relief and expressly directed at "convert[ing] the existing Renewal Lease into an equitable mortgage." Compl. ¶ 115. A claim to convert the Lease arises under the Lease.

- Fourth Claim for Relief (Breach of Fiduciary Duty). Plaintiffs plead this claim in the alternative to the First through Third Claims for Relief "[t]o the extent that this claim seeks turnover of title to the Property." Compl. ¶ 131. In that alternative posture, the claim is indistinguishable from the recharacterization claims: same res, same remedy, same operative facts. To the extent this claim instead seeks damages measured by amounts "in excess of what was a fair and reasonable sale price and fair and reasonable financing terms" (*id.*), it requires valuation of the Lease terms and is equally arbitrable.

- Thirteenth Claims for Relief (Accounting). The Complaint seeks an accounting of rent, CAM charges, and the disputed 5,000 square feet. These are Lease line items, itemized "and expressly enumerated in the Lease." Compl. ¶¶ 60, 74. Whether Dove's Landing over-billed CAM requires reading the Lease provisions that define and allocate those charges. The parties dispute whether line items for legal and accounting, management fees, office supplies, security, and insurance are compensable under §§ 5, 6(a), 7, 16, 36, and 38(b). Memorandum of P&As [Docket No. 995] at 10; Opposition [Docket No. 1027] at 9; Omnibus Reply [Docket No. 1081] at 3-4. An accounting is precisely an exercise the parties agreed an arbitrator would perform.

- Fourteenth Claim for Relief (Constructive Trust). A constructive trust is a remedy, not an independent wrong, and premised on "the disguised financing nature of the Lease Transactions." Compl. ¶ 219.

- Fifth Claim for Relief (Cal. Corp. Code § 5233). The Fifth Claim for Relief names Attorney General Bonta as a nominal defendant. Compl. ¶ 17. The Attorney General is not a party to either Lease and cannot be compelled to arbitrate. Defendants therefore do not seek arbitration of this claim, and instead request that it be stayed pending the outcome of the arbitration, because the fairness of the Lease terms – the substantive question the Fifth Claim for Relief presents – is the same question the arbitrator will decide.

The Complaint's Claims for Relief are baseless and wholly lacking in factual or legal support, and Defendants intend to demonstrate this in the arbitration. However, each of these Claims for Relief falls squarely within the scope of the arbitration provisions, which include "any question, dispute or controversy arising under the provisions of this Lease Agreement." Renewal Lease § 39. For the reasons set forth in the preceding section, none is core, and the Court should accordingly compel arbitration as to them. The Fifth Claim for Relief, while not arbitrable for the separate reason that the Attorney General is not a party to either Lease, rests on the same lease-based question and should be stayed pending the outcome of the arbitration.

### D. The Court Should Exercise Its Discretion to Refer the Sixth Through Eleventh Claims for Relief to Arbitration; Alternatively, Those Claims for Relief Should Be Stayed

The Sixth through Eleventh Claims for Relief plead fraudulent transfer under the California UVTA and common law (Sixth through Eighth Claims for Relief), § 548 (Ninth Claim for Relief), § 544(b) (Tenth Claim for Relief), and §§ 549 and 550 (Eleventh Claim for Relief). They share a single operative premise: that payments Plaintiffs made ***under the Leases*** – rent and CAM charges – were for less than reasonably equivalent value. Compl. ¶¶ 158-159, 166-167, 182-185, 191-194. While each of the foregoing Claims for Relief might be "core" on their face, the underlying issues are fundamentally breach of contract claims based in state law where the factual and legal disposition will turn on non-core issues of fact and law.

#### 1. The Court Should Refer the Sixth Through Eleventh Claims for Relief to Arbitration

##### a. Plaintiffs Concede That the Sixth Through Eleventh Claims for Relief Arise From the Lease

The Debtors have stated to this Court that the Complaint "asserts claims under §§ 544, 548, 549, and 550, among others, ***arising from the Lease*** among other related transactions." Omnibus Reply [Docket No. 1081] at 5 (emphasis added). The arbitration provisions reach any dispute

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"arising under the provisions of this Lease Agreement." Leases, §§ 39, 41. Plaintiffs' own description of their pleading acknowledges that these Claims for Relief fall within the Lease's arbitration provision.

Bankruptcy claims that on their face are core but are essentially basic contract claims should be treated as "non-core" for purposes of determining whether to grant a motion to compel arbitration. *In re Winimo Realty Corp.*, 270 B.R. 108, 124 (S.D.N.Y. 2001). In *Winimo*, the debtor sought to assume and assign a lease under section 365 of the Bankruptcy Code and the counterparty objected on several grounds (one of which was breach) and that the breach dispute should be arbitrated as required by the lease. The bankruptcy court denied the motion to compel arbitration because "the underlying purpose of the Bankruptcy Code may adversely [be] affected by enforcing the arbitration clause" but then failed to "explain *how* arbitration of the PILOT Proceeding would adversely affect the administration of Cibro's estate or conflict with Bankruptcy Code policy," other than the expeditious resolution of the disputed issues, which was not a sufficient basis to deny the motion to compel. *Id.* In reversing the bankruptcy court, the District Court held:

> The factors cited by the Bankruptcy Court are insufficient to support a finding that it had discretion to refuse to compel arbitration of the PILOT Proceeding. First, the issues underlying the PILOT Proceeding do not arise from rights conferred or obligations imposed by the Bankruptcy Code. Therefore, they do not, standing alone, present an inherent conflict between Bankruptcy Code policy and the FAA's endorsement of the arbitral forum. Cibro's claims allege that the PILOT Agreement is void for lack of consideration or voidable as a fraudulent conveyance and/or transfer. In its Breach Allegation, APDC claims that Cibro has breached the terms of the Leases by failing to meet its payment obligations under the PILOT Agreement. None of these claims was created by the Bankruptcy Code; they are simply contractual claims derivative of pre-bankruptcy agreements.

*Id*. (internal citations and quotations omitted).[18]

---

[18] In *Winimo*, in reversing the bankruptcy court's denial of the motion to compel arbitration, the District Court reasoned that "Cibro [the debtor] does invoke sections of the Bankruptcy Code when it alleges that the PILOT Agreement is voidable as a fraudulent conveyance and/or transfer pursuant to Section 273 of the New York Debtor & Creditor Law and Sections 544(a) and 548(b) of the Bankruptcy Code. However, the Supreme Court has explicitly stated that "fraudulent conveyance actions by bankruptcy trustees . . . constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55, (1989) (quotation marks omitted). Therefore, the Court has held, such claims "are quintessentially suits at common law" that "resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate." *Id.* at 124 n. 12 (certain internal citations omitted).

The bankruptcy court in *In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. 181, 207-08 (Bankr. S.D.N.Y. 2002) made the same finding under similar facts to those in this case and stayed facially "core" causes of action. In *Hagerstown,* the bankruptcy court determined that the fraudulent conveyance claims were directly connected to the underlying contract disputes. *Id.* at 208. The court also noted that the pending arbitration and the fraudulent conveyance claims in its case shared common questions of fact, predicting that the arbitration might contribute to the resolution of the fraudulent conveyance claims. *Id.* Accordingly, the court in *Hagerstown* stayed the fraudulent conveyance claims so that the arbitration could proceed in accordance with Congressional intent. *Id.*; *see also, Enron Power Mktg. v. City of Santa Clara* (*In re Enron Power Mktg.*), 2003 WL 68036, *31 (S.D.N.Y. Jan. 8, 2003) ("Because I find that plaintiff's causes of action are essentially contract claims dressed up as bankruptcy claims, they must be considered 'non-core' for the purpose of the present motion to withdraw the reference from Bankruptcy Court.") *In re Cardeli*, 2010 WL 4791801, *7-9 (Bankr. S.D.N.Y. Nov. 18, 2010) (same).

The Sixth through Tenth Claims for Relief are no different than the causes of action in *Winimo*, *Hagerstown*, *Enron*, and *Cardeli*, where here each of the foregoing claims pose the following identical questions: (1) did Dove's Landing charge for expenses that were not properly recognized as CAMs under the terms of the Renewal Lease and (2) did Dove's Landing charge OroHealth for 5,000 square feet of space that was not covered by the terms of the Renewal Lease. Each of these issues here are pure contractual disputes that are non-core even though they are styled as nominally core fraudulent transfer claims. These Claims for Relief should be treated as "non-core" and arbitration is properly compelled as to these claims.

b. There is No Inherent Conflict Between Arbitration of the Sixth Through Eleventh Claims for Relief and the Purposes of the Bankruptcy Code

The Ninth Circuit permits denial of arbitration in a core proceeding ***only*** upon a finding of inherent conflict, and places the burden on the party resisting arbitration. *Thorpe*, 671 F.3d at 1020-21; *Shearson*, 482 U.S. at 227. Plaintiffs cannot carry this burden, for five reasons.

***First***, the concerns that animated *Thorpe* are absent. In *Thorpe*, the dispute revolved around the debtor's objection to major creditor's claim, which on its face was indisputably core. *Thorpe*,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

671 F.3d at 1021. The Ninth Circuit held that an arbitration of such disputed claim threatened to unravel a negotiated resolution affecting an entire class of asbestos claimants and to disturb the bankruptcy court's own prior orders. *Id*. at 1022-23. Here, the arbitration would involve two Plaintiffs and three Defendants, one parcel of real property, and one stream of lease payments. No class of claimants is affected. No confirmed plan is disturbed. No prior order of this Court is implicated. *Thorpe* identified a conflict between claim allowance rooted in the bankruptcy court's jurisdiction with the systemic consequences of arbitration; nothing comparable exists in a two-party contract dispute where the matter will be resolved through the interpretation of the Renewal Lease and whether its terms permit the inclusion of all CAM related expenses and whether monthly rent was charged in accordance with the terms of the Renewal Lease, which tracks the same type of disputes and the courts' dispositions in *Winimo*, *Hagerstown*, *Enron*, and *Cardeli*.

***Second***, the Claims for Relief are wholly derivative of contracts OroHealth signed and twice agreed to arbitrate and the disposition of those claims depends upon the resolution of the underlying non-core contract disputes. The transfers Plaintiffs seek to avoid are rent and CAM payments called for by the Leases. Whether they exchanged reasonably equivalent value depends entirely on what the Leases required and what the Leases are. The avoidance claims do not present an independent bankruptcy question to which the Leases are incidental; the Leases are the whole of the inquiry. Where the estate's claim is in substance a claim on the debtor's contract, the estate takes that contract subject to its dispute-resolution terms. *Cf. Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir. 1989) (distinguishing claims derivative of the debtor, which remain arbitrable, from claims created by the Code).[19]

[19] The decision in *Hays* supports the arbitrable nature of the Sixth though Ninth and Eleventh Claims for Relief here. *Hays*, however, held the § 544(b) claims there at issue non-arbitrable on the ground that such claims belong to creditors rather than to the debtor. 885 F.2d at 1155. That holding of *Hays* does not control here as to the Tenth Claim for Relief's section 544(b) claims because the Tenth Claim for Relief is pleaded as one of six Claims for Relief sharing a single operative premise – that payments made under the Leases exchanged less than reasonably equivalent value – and the antecedent question in every one of them is what the Leases required and what the Leases are. Defendants' request as to the Tenth Claim for Relief is accordingly directed in the first instance to the Court's discretion under *Thorpe* and, alternatively, to a stay pending the arbitrator's determination of that antecedent question.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

***Third***, the estate's substantive rights are fully preserved. An arbitrator applies the same substantive law this Court would apply: sections 548, 544(b), 549, and 550 of the Bankruptcy Code, and the California UVTA. Any award is subject to confirmation and to this Court's authority under Cal. Code Civ. Proc. §§ 1285-1287.6. Any recovery would flow to the estate. The allowance and priority of claims, the application of section 502(d) of the Bankruptcy Code, the treatment of any cure obligation, and the administration of these cases remain exclusively with this Court. Referral changes the forum in which one contract question and its consequences are decided; it changes nothing about who benefits or who administers the estate.

***Fourth***, referral to a single arbitrator is the only course that resolves the lease questions once. The 2025 CAM charges and the $380,000 payment are presently implicated both in the cure dispute in the main cases and in the Sixth through Eleventh Claims for Relief of this proceeding. Opposition [Docket No. 1027] at 3-4; Omnibus Reply [Docket No. 1081] at 3-4; Compl. ¶¶ 78, 84. Referring all lease-dependent claims to one arbitrator, and staying the remainder pending that determination, consolidates those questions before a single decision-maker. Piecemeal resolution – some lease questions in arbitration, others here, others still in the assumption proceeding – is what multiplies cost and delay, and it is what Defendants' requested relief is designed to avoid.[20]

***Fifth***, referral serves the estate's economic interest. The premise of every one of the Sixth through Eleventh Claims for Relief is that Plaintiffs overpaid under the Leases. That premise is false and cannot be tested without deciding whether the Lease Transactions are leases or a financing arrangement, and what the Leases authorized. Those questions are squarely within the arbitration provisions. If the characterization claims proceed in arbitration while the Sixth through Eleventh Claims for Relief remain here, the same evidence – the Leases, the CAM ledgers, the valuation

[20] Section 1281.2(c) of the CAA does not apply here. That provision addresses a narrow discretionary exception to arbitrability where a party to the arbitration agreement is also a party to pending litigation with a ***third party*** (*i.e.,* one not a party to the arbitration agreement) arising out of the same transaction. The only non-signatory named in this proceeding is the Attorney General, who is a nominal defendant against whom no relief is sought, Compl. ¶ 17, and Defendants request that the Fifth Claim for Relief be stayed in its entirety pending the arbitration – leaving no possibility of conflicting rulings on a common issue of law or fact. Defendants Wentz and Sports Club have agreed to be bound by the arbitration, and are therefore not third parties within the meaning of the subdivision.

testimony – will be presented twice. The resources of the bankruptcy estate would be wasted by trying the same facts in two forums.

2. If the Court Declines Referral to Arbitration, the Sixth through Eleventh Claims for Relief Should Be Stayed

If the Court declines to exercise its discretion to refer the Sixth through Eleventh Claims for Relief to arbitration, Defendants request that those claims be stayed pending completion of the arbitration of the Claims for Relief that are referred. Every one of them depends on an antecedent question the arbitrator will decide, as follows:

- The alleged "transfers" are rent and CAM payments made under the Leases. Compl. ¶¶ 158-159, 166-167, 182-185, 191-194. Whether those payments were excessive or not – whether Plaintiffs received "reasonably equivalent value" – cannot be determined until it is determined what the Leases required Plaintiffs to pay and whether the Leases are leases at all.

- If the arbitrator determines the Lease Transactions are a financing arrangement, the payments are debt service, and the "reasonably equivalent value" analysis is transformed. If the arbitrator determines they are true leases, as Defendants intend to demonstrate, the analysis proceeds on rent. Either way, the avoidance claims cannot be tried first without risking a judgment the arbitration later contradicts.

- The disputed $380,000 post-petition payment (Eleventh Claim for Relief) was made "on account of prepetition CAMs charges." Compl. ¶ 84. Whether those CAM charges were owed at all is a Lease-construction question squarely within the arbitration provisions – and one the parties are contesting.

3. The Twelfth Claim for Relief Should Be Stayed

The Twelfth Claim for Relief arises under sections 105(a) and 362(a)(3) of the Bankruptcy Code and asks this Court to remedy an alleged violation of the automatic stay. Defendants do not ask that Twelfth Claim for Relief be arbitrated. Enforcement of the automatic stay is an exercise of this Court's authority over its own orders and its own process, and Defendants recognize that referring such a claim would raise precisely the inherent conflict *Thorpe* contemplates.

The Twelfth Claim for Relief should nonetheless be stayed, for the same reason as the other dependent claims: the $380,000 payment at issue was made "on account of prepetition CAMs charges," Compl. ¶ 84, and whether those charges were owed under the Leases is a question for the arbitrator. Defendants agree that the stay-violation question may be heard by this Court, if necessary and appropriate, once the predicate question is resolved in arbitration.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

4. Authority for the Stay, and the Equities

This Court has authority to enter the requested stays under Cal. Code Civ. Proc. § 1281.4 as to any issue referable to arbitration, and under its inherent power to control its docket. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (stay proper pending resolution of independent proceedings that bear upon the case, whether "judicial, administrative, or arbitral in character," and without requiring that the other proceeding be controlling).

The equities favor referral to arbitration, or at minimum a stay, so that the Defendants have the opportunity to vigorously defend themselves against the unfounded and unsupported allegations in the Complaint in the forum chosen by the parties. Plaintiffs remain in possession of the Property and continue to operate licensed clinic and office space there. No creditor is prejudiced by resolving the threshold characterization question in the forum the parties selected, and every creditor is prejudiced by the cost of trying the same facts in different forums.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order:

**AS PRIMARY RELIEF**

1. Compelling arbitration, before the American Arbitration Association under its Commercial Arbitration Rules to the extent those rules do not conflict with California law, of the First, Second, Third, Thirteenth, and Fourteenth Claims for Relief of the Complaint, pursuant to the arbitration provisions of the Initial Lease and the Renewal Lease;

2. Compelling arbitration of the Fourth Claim for Relief, including to the extent it seeks recovery of the Property or damages measured by the Lease terms;

3. Compelling, in the exercise of this Court's discretion under *Thorpe*, arbitration of the Sixth through Eleventh Claims for Relief;

**AS ALTERNATIVE RELIEF**

4. If the Court declines the relief requested in paragraph 3, referring to arbitration the discrete questions whether the Lease Transactions constitute true leases and what rent and common-area maintenance charges the Leases authorized, and staying the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Sixth through Eleventh Claims for Relief pending the arbitrator's determination of those questions;

5. If the Court declines the relief requested in paragraphs 3 and 4, staying the Sixth through Eleventh Claims for Relief pending completion of the arbitration of the Claims for Relief referred;

**IN EITHER EVENT**

6. Staying the Fifth Claim for Relief pending completion of the arbitration;

7. Staying the Twelfth Claim for Relief pending completion of the arbitration;

8. Staying the requirement to respond to the Complaint, pursuant to Rule 12 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7012, for twenty-eight days after completion of the arbitration;

9. Staying this adversary proceeding in all other respects pursuant to Cal. Code Civ. Proc. § 1281.4 and the Court's inherent authority; and

10. Granting such other relief as is just and proper.

Dated: September 4, 2026 PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Teddy M. Kapur*
Richard M. Pachulski
Alan J. Kornfeld
Teddy M. Kapur

*Counsel to Defendants Dove's Landing, LLC, Robert J. Wentz, and Oroville Sports Club, LLC*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA